Blew, Respondent, v. McClelland, Appellant.

1. Where there is a parol agreement for the purchase of real estate, and the purchaser pays a portion of the purchase money, but there is not such part performance as will take the case out of the statute of frauds, and a loss occurs, as by the burning of buildings, before the execution of a valid contract of sale, such loss will fall upon the vendor, and the purchaser may recover back the purchase money advanced.

*Appeal from Mercer Circuit Court.*

The facts sufficiently appear in the opinion of the court.

*Slack, Edwards & H. C. Ewing*, for appellant.

I. McClelland admitted the agreement as charged. It was therefore not void. Blew had no right to insist upon the statute of frauds. He has stated what the contract was. (McGowen v. West, 7 Mo. 569; Farrar v. Patten, 20 Mo. 83.) McClelland has admitted the important facts as stated. McClelland's having received the insurance money does not affect his rights. (2 Amer. L. Cas. 535, 403 ; 4 Mass. 331.) The loss by fire falls upon the vendee. (Sugd. on Vend.

277.) The court erred in striking out the answers of Mc-Clelland. (Paine v. Meller, 6 Ves. 349.)

*Harris* and *Tindall & Shanklin*, for respondent.

I. The portions of defendant's answers were properly stricken out. The contract of purchase was incomplete. At the time of the fire plaintiff was not, either in law or equity, the owner. (See Thompson v. Gould, 20 Pick. 134; 11 B. Monr. 42; 2 Story Eq. § 769; 14 Pet. 173; 5 Pet, 264; 1 Pet. 376; 2 Sch. & Lif. 554; 4 Pet. 311; 6 Sim. 340; Greenway v. Adams, 12 Ves. 399; Denton v. Stewart, 1 Cox, 258; 2 Keen, 25.)

NAPTON, Judge, delivered the opinion of the court.

On the 8th of November, 1856, Blue, the plaintiff, made a verbal contract with McClelland for the purchase of a lot in the town of Princeton, Mercer county, on which there was a tavern and other buildings. The improvements constituted the principal value of the property. The price agreed on was $1,550, five hundred of which was paid down. McClelland was to execute on the same day, or the Monday following, a title bond for a conveyance of the title when the purchase money was paid, and Blue was to give his notes for the balance of the purchase money. On Sunday, the 9th of November, the buildings were all destroyed by fire. Nothing further was done; the title bond, although tendered, was never received, and the notes for $1,050 were not executed. McClelland had a policy of insurance on the premises for eight hundred dollars, which he collected from the company, representing himself as the owner, and which in his answer he offers to treat as a liquidation of the purchase money, *pro tanto*. This suit is brought by Blue to recover the five hundred dollars purchase money advanced, and the only question presented by the record is whether, under these circumstances, the action will lie.

The case of Paine v. Meller, 6 Ves. 349, is understood to have determined that, where there is a contract for the sale

of a house, and before a conveyance the house is burned down, the loss falls on the purchaser, and the purchaser is still bound to execute his agreement to pay the purchase money. This does not appear to have been the opinion of the Master of the Rolls in Stout v. Bailey, 2 P. Wms. 220, who thought, in such a case, the purchaser would not be bound. But Sir Edward Sugden seems to regard the decision of Lord Eldon, in Paine v. Meller, as the true exposition of the law. It is based upon the doctrine that equity regards as done what has been agreed to be done, and therefore, after a valid agreement to purchase, looks upon the purchaser as the owner. Hence Sir Edward Sugden declares the law to be that a " vendee, being equitable owner of the estate from the time of the contract for sale, must pay the consideration for it, although the estate itself be destroyed between the agreement and the conveyance ; and, on the other hand, he will be entitled to the benefit which may accrue to the estate in the interim." (1 Sugden on Vendors, 277.) The principle has, in England, been carried to the extent of holding that, where an agreement was made for the purchase of an estate in consideration of an annuity for life to the vendor, and he dies before the conveyance and before the annuity becomes due, the contract will still be specifically enforced. (Mortimer v. Cupper, 1 Bro. C. C. 156 ; Jackson v. Lever and others, 3 Bro. C. C. 605.)

But the maxim of courts of equity, that whatever is agreed to be done is considered as actually performed, is confined to cases where the contract or agreement is a valid one and can be enforced. If the contract, by reason of its being by parol, is one which neither a court of equity or of law can enforce, and nothing has been done to withdraw it from the operation of the statute of frauds, the title remains as it was, both in law and equity, unaffected by the parol agreement; and whatever accidental losses the property may sustain must of course fall upon the owner. In such a case, it is clear that if, after the parol agreement to purchase, a valuable gold mine was found upon the premises, the pur-

chaser could not compel a specific performance, unless there had been a change of possession or some other circumstance which courts have determined sufficient to take a case out of the statute. Neither ought he to be compelled to pay his purchase money, when a fire has destroyed the buildings which formed the principal inducement for the purchase. It would be very inequitable to adopt a rule which would not operate alike on vendor and vendee, which would leave it to the option of one to enforce the contract or not, as it might promote his interest or caprice. The case of McGowan v. West, 7 Mo. 569, was a case where the purchaser had taken possession, and by reason of that circumstance could have enforced a conveyance notwithstanding the contract was by parol. This court would not permit him to hold on to the land, and set up, as a defence to a suit upon his note for the purchase money, that the contract was a parol one. In the present case, there was no change of possession, and there was no other circumstance which would have enabled the plaintiff to enforce a specific performance of the contract had the estate, instead of being almost rendered valueless, been unexpectedly increased in value. As the contract could not be enforced by the purchaser, it would be unjust to enforce it against him. Cunnutt v. Roberts, 11 B. Monr. 42.)

Judge Scott concurring, the judgment of the circuit court is affirmed. Judge Ewing, having been of counsel, did not sit in this case.